IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOYCE ZATARAIN, as Administratrix of the Estate of Coleman Zatarain, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | CASE NO. 2:09-cv-850-MEF |
| v. | ) ) | |
| SWIFT TRANSPORTATION, INC., *et al.*, | ) ) ) | (WO – PUBLISH) |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on Defendants' Motion for Summary Judgment, (Doc. # 16), filed on January 6, 2011. On June 6, 2007, an automobile accident occurred on Highway 231 in Alabama that resulted in the death of Coleman Zatarain ("Zatarain"). Plaintiff, the Administratrix of Zatarain's estate, originally filed the instant action on May 26, 2009, in the Circuit Court of Montgomery County, Alabama alleging the following state-law claims: (1) negligence against Dericka Blockett ("Blockett") and Swift Transportation, Inc. ("Swift Transportation") (collectively "Defendants"); (2) wantonness against Blockett and Swift; (3) negligent and/or wanton entrustment against Swift; (4) negligent hiring, training, retention, and supervision against Swift; and (5) wanton hiring, training, retention and supervision against Smith. (Doc. # 1 Ex. 1, State Ct. Compl. ¶¶ 7–25). Having removed the suit to this Court on September 8, 2009, (Doc. # 1), Defendants now seek summary judgment on the grounds that Plaintiff cannot establish

negligence or wantonness and/or because Zatarain was contributorily negligent. (Doc. # 17). After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the Court finds that Defendants' Motion for Summary Judgment, (Doc. # 16), is due to be DENIED.

## JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant 28 U.S.C. § 1332, based upon the parties' diversity of citizenship[1] and an amount in controversy exceeding $75,000.00, exclusive of interest and costs. The parties contest neither personal jurisdiction nor venue and the Court finds adequate grounds alleged to support both personal jurisdiction and venue.

## FACTS AND PROCEDURAL HISTORY

**I. Facts**

Blockett received his Commercial Driver's License ("CDL") after graduating from driver training school in Millington, Tennesee. (Doc. # 17, at 3 ¶ 5 (citing Doc. # 18 Ex. C, Blockett Dep. 12:13–17)). According to Blockett, his CDL has never been suspended or revoked. (Doc. # 18 Ex. C, Blockett Dep. 8:4–7, 39:7–9). He also testified that, other than the accident at issue here, he has never been involved in another accident. (Doc. # 17, at 4 ¶ 7 (citing Doc. # 18 Ex. C, Blockett Dep. 34:7–13)). On July 15, 2005, Swift

---

[1] For purposes of § 1332(a), Zatarain's estate is a citizen of Alabama. Blockett is an individual domiciled in Tennessee. Swift Transportation is a citizen Delaware, its state of incorporation, and Arizona, the state where its principal place of business is located.

2

Transportation hired Blockett as a truck driver. (*Id.* at 4 ¶ 11 (citing Doc. # 18 Ex. E, Swift Transportation Driver Master)). At the time of the accident, Blockett was driving from Wynne, Arkansas to Albany, Georgia in an eighteen-wheel truck owned by Swift transportation. (Doc. # 25, at 2 (citing Doc. # 24 Ex. B, Blockett Dep. 13:21–24; Ex. C, Ritchie Dep. 114:19–23)).[2]

    Zatarain lived in Troy, Alabama while a student at Troy University. (Doc. # 17, at 3 ¶ 1; Doc. # 25, at 2). Prior to the accident, he had repeatedly traveled the relevant portion of Highway 231. (Doc. # 17, at 3 ¶ 3 (stating that Zatarain had traveled the Highway 231 route "at least one hundred times"); Doc. # 25, at 2 (agreeing that Zatarain had traveled the portion of Highway 231 where the accident occurred "many times")). Around 12:40 a.m. on June 6, 2007, Zatarain was traveling towards Troy, Alabama on Highway 231 South when he collided with the rear of Blockett's truck near the intersection with Highway 82. (Doc. # 17, at 4 ¶ 14; Doc. # 25, at 2). Zatarain suffered fatal injuries from the accident and died. (Doc. # 1 Ex. 1, State Ct. Compl. ¶ 5). The accident occurred in a construction zone, with construction signs in the vicinity and a posted speed limit of 55 miles per hour ("mph"). (Doc. # 17, at 6 ¶¶ 24–25 (citing Doc. # 18 Ex. F, Hardy Dep. 12:16–22, 13:18–21; Ex. G, Frost Dep. 28:14–19, 29:9–19,

---

[2] Dennis Ritchie ("Ritchie") is Swift Transportation's Corporate Representative. (Doc. # 17, at 4 ¶ 9).

66:13–17); Doc. # 25, at 2).³ There was no minimum speed posted. (Doc. # 17, at 6 ¶ 32 (citing Doc. # 18 Ex. G, Frost Dep. 62:21–63:1)). While the parties agree on these basic facts, they disagree on events leading up to the accident.

### A. Blockett's Testimony

Defendants contend that "prior to the accident, Blockett had performed a pre-trip inspection, and that inspection revealed his truck and trailer were in good working order." (Doc. # 17, at 4 ¶ 13 (citing Doc. # 18 Ex. C, Blockett Dep. 33:13–17)). At the time of the accident, Blockett claims that he was driving at a speed of 40 mph. (*Id.* at 5 ¶ 21 (citing Doc. # 18 Ex. C, Blockett Dep. 17:13–16, 19:18–23, 43:20–22)).⁴ Blockett testified that he did not feel the impact of Zatarain's car striking his truck, but that he heard a "boom" and thought he had gotten a flat tire. (*Id.* ¶ 15 (citing Doc. # 18 Ex. C, Blockett Dep. 17:20–18:19)). He stated that, although he did not immediately brake after the impact, he eased into the emergency lane as soon as he could. (*Id.* ¶¶ 17–18 (citing Doc. # 18 Ex. C, Blockett Dep. 19:24–20:5)). After stopping his truck, Blockett then "saw . . . Zatarain's vehicle lodged underneath his trailer." (*Id.* ¶ 19 (citing Doc. # 18 Ex. C, Blockett Dep. 20:12–14, 33:3–4)). Blockett claims that there was nothing he could have done to prevent the accident. (*Id.* ¶ 20 (citing Doc. # 18 Ex. C, Blockett Dep.

---

³ Corporal Cynthia Hardy ("Corporal Hardy") and Lieutenant Anthony Frost ("Lieutenant Frost") were the Alabama State Troopers who investigated the accident.

⁴ Plaintiff emphasizes that Blockett repeatedly testified that he did not actually know how fast he was going. (Doc. # 25, at 4 (citing Doc. # 24 Ex. B, Blockett Dep. 17:3–9) (stating that he did not know how fast he was going, but that it was "about 40 . . . [or] 45.")).

52:8–10)).

### B. The Investigation by Corporal Hardy and Lieutenant Frost

Defendant emphasizes that Corporal Hardy and Lieutenant Frost both testified that Blockett told them that he was going approximately 40 mph at the time of the accident. (*Id.* at 6 ¶ 29 (citing Doc. # 18 Ex. F, Hardy Dep. 15:14–23, 19:23–20:5; Ex. G, Frost Dep. 31:13–22)). Lieutenant Frost measured 60 feet of skid marks left by Zatarain braking. (Doc. # 18 Ex. 5, Frost Dep. 27:7–10). He also measured 294 feet of drag marks resulting from the truck continuing to drive with the car lodged underneath it. (*Id.* 25:23–26:9). "Using Blockett's speed of 40 mph, Lieutenant Frost calculated [that] . . . Zatarain's vehicle was travelling [sic] 68 mph pre-skid." (Doc. # 17, at 6 ¶ 30 (citing Doc. # 18 Ex. G, Frost Dep. 31:2–4)). Lieutenant Frost also stated that, prior to where the accident occurred on Highway 231, the line of sight would have been a half mile or more. (*Id.* ¶ 31 (citing Doc. # 18 Ex. G, Frost Dep. 21:3–8).

Plaintiff points out that Lieutenant Frost admitted to making no scientific calculation of the Swift Transportation truck's speed. (Doc. # 25, at 4 (citing Doc. # 24 Ex. E, Frost Dep. 61:14–22)). Indeed, Lieutenant Frost testified that he was unable to prove or disprove whether the truck was stopped in the road. (*See* Doc. # 24 Ex. E, Frost Dep. 71:6–7). Finally, Plaintiff emphasizes that Lieutenant Frost's and Corporal Hardy's conclusions that Zatarain was speeding and inattentive were based on Blockett's statements that he was traveling about 40 mph.

5

"When asked whether it was possible that the truck was stopped in the road, [Lieutenant] Frost testified, 'I can't prove he wasn't, I couldn't prove he was either.'"  that he could not prove whether the truck was stopped in the road or not.  (Doc. # 24 Ex. E, Frost Dep. 71:4–7).

### C.  The Experts

#### i. Defendants' Experts

Defendants retained two alleged experts.  The first is Michael Loop ("Loop"), whom Defendants describe as a "human factors expert."  (Doc. # 17, at 7 ¶ 36).  Loop has a Ph.D. in psychology and has both taught and researched in various fields, including vision sciences or physiological optics.  (Doc. # 18 Ex. H, Defendants' Rule 26 Expert Disclosures).  Loop testified that he "inspected a Swift [Transportation] trailer, similar to the one operated by Blockett, on November 5, 2010 at 5:15 [a.m.] at the Cordova, Alabama entrance ramp for Corridor X."  (Doc. # 17, at 8 ¶ 38 (citing Doc. # 18 Ex. I, Loop Dep. 12:14–18)).  "The purpose of inspecting the Swift trailer was to get some photographs and some light measurements off of the back of the Swift trailer being illuminated only by the headlights of a vehicle behind it."  (Doc. # 18 Ex. I, Loop Dep. 13:20–14:1).  After taking these measurements at 60 feet and 209 feet using his car's low and high beams, Loop determined that the truck should have been visible for the actual measured distance of the line of sight and that it would have been unmistakable that they were the lights of an eighteen-wheeler truck.  (*Id.* 25:4–12).

6

Defendants also retained Allen Powers ("Powers") as an "accident reconstruction expert." (Doc. # 17, at 7 ¶ 36). Powers has a Masters degree in Mechanical Engineering and "has been involved in accident reconstruction for over 25 years." (Doc. # 18 Ex. H, Defendants' Rule 26 Expert Disclosures). Powers and another engineer, Garrett Davis, "inspected and measured the accident scene and . . . Zatarain's vehicle" in order to determine the Delta V for Zatarain's car. (Doc. # 17, at 8–9 ¶¶ 43, 45 (citing Doc. # 18 Ex. J, Powers Dep. 40:10, 47:9–21)). "The Delta V is the change in longitudinal velocity of the [car] as a result of the impact." (*Id.* at 9 ¶ 45). Powers calculated that the Delta V for Zatarain's car was 29 to 34 mph", meaning that the difference in speeds between Zatarain's car and Blockett's trailer at the time of impact was somewhere between 29 and 34 mph. (*Id.* ¶¶ 45–46; *see also* Doc. # 18 Ex. J, Powers Dep. 102:5–10).[5] Thus, Defendants contend that, at the time of impact, Blockett was traveling at 40 mph while Zatarain was traveling at 69 to 74 mph. Taking into account Blockett's statements that he was traveling at 40 mph and the Delta V of 29 to 34, Powers estimated the pre-skid speed of Zatarain's car would be in the upper 70s to low 80s mph—*i.e.* that Zatarain was driving in the upper 70s to low 80s mph when he started to brake. (Doc. # 18 Ex. J, Powers Dep. 127:1–9). Powers also measured the line of sight to be one quarter to one

---

[5] In making this calculation, Powers "ignored damage to the Swift [Transportation] trailer, the [car's] engine, and the [car's] front passenger wheel." (Doc. # 17, at 9 ¶ 45 (citing Doc. # 18 Ex. J, Powers Dep. 64:17–23)). Thus, Powers testified that Delta V of 29 to 34 mph is "the low end of the range", and that the actual difference in speed between the two vehicles would be higher. (Doc. # 18 Ex. J, Powers Dep. 102:5–13).

7

third of a mile. (Doc. # 17, at 8 ¶ 44 (citing Doc. # 18 Ex. J, Powers Dep. 63:12–16)). Thus, Defendants contend that Zatarain was speeding and driving inattentively at the time of the accident.

### ii. Plaintiff's Expert

Plaintiff retained Don Phillips ("Phillips"), a licensed engineer who has worked for years in the area of accident reconstruction. (Doc. # 24 Ex. N). Phillips disputes the Delta V calculated by Powers. He first objects to the method used by Powers, stating that the peer-reviewed paper relied upon by Powers as the basis for his methodology "is not applicable to this accident and how [one] analyze[s] it." (Doc. # 25, at 6–7 (citing Doc. # 24 Ex. H, Phillips Dep. 99:6–23)). He also states that, in determining his Delta V, Powers combined the wreck energy derived from the crush of the front of the car with the wreck energy derived from the crush of the roof of the car, which Phillips has never seen done before. (*Id.* at 6 (citing Doc. # 24 Ex. H, Phillips Dep. 103:11–17)). To determine the Delta V, Phillips downloaded data from the air bag control module for Zatarain's car, which showed a 21.38 mph change of speed at the time of impact. (*Id.* (citing Doc. # 24 Ex. H, Phillips Dep. 89:19–23)). He also performed a frontal bumper crash analysis which provided him with a Delta V range of 23.1 mph to 29.26 mph. (Doc. # 24 Ex. H, Phillips Dep. 92:20–93:21). Thus, Powers testified that the actual Delta V was likely from 23 to 25 mph. (*Id.* 108:5–6).

In addition to calculating a lower Delta V, Phillips stated that "[t]here is no

evidence in the file materials and physical evidence reviewed to support that [Zatarain's car] was traveling at an excessive speed prior to impact." (Doc. # 24 Ex. G, Phillips Report Dated September 13, 2010 at 3). Indeed, not only did he find no evidence that Zatarain was speeding, but he also testified that the physical evidence demonstrated that Zatarain would not have been traveling as fast as Defendants claim. Relying on the fact that a typical low beam headlight projects at a distance of 200 feet, Phillips concluded that, if Zatarain was traveling as fast as Defendants claim—i.e. in the upper 70s or low 80s mph pre-skid—then he would have been unable to leave the 60 feet of skid marks upon seeing the truck with the headlights of his car. (*Id.* 109:1–110:5). Rather, Phillips concluded that Zatarain "would have simply run into the back of the truck." (Doc. # 25 at 7; *see also* Doc. # 24 Ex. H, Phillips Dep. 110:3–5). Phillips testified that "[t]he only speed that works . . . based on the fact scenario [of this case] is that . . . Zatarain's vehicle is doing about 55 [mph] and the truck is doing between 10 and 15 [mph]." (Doc. # 24 Ex. H, Phillips Dep. 110:8–11). Thus, he concluded that the Swift Transportation truck driven by Blockett "was traveling at an unsafe speed for conditions well below the posted speed limit and creat[ing] a hazard to approaching southbound drivers." (*Id.* Ex. G, Phillips Report Dated September 13, 2010 at 3).

   **D. Allan Jackson's Affidavit**

In support of her version of events, Plaintiff also relies upon the statements of an eyewitness, Allan Jackson ("Jackson"). At the time of the accident, Jackson ("Jackson")

9

was driving down Highway 82 towards the intersection with Highway 231. (Doc. # 24 Ex. J, Jackson Aff. ¶ 2). Although he did not see the accident, Jackson saw the vehicles almost immediately after the impact. (*Id.*). Jackson stated the following:

> As I approached the intersection of U.S. Highway 231 and U.S. Highway 82, I saw an eighteen-wheel truck dragging a car. The truck was moving very slow while dragging the car. . . . I would estimate that the truck was moving around 10 miles an hour and dragging the car at a steady speed as it crossed the intersection of U.S. Highway 82 and U.S. Highway 231. It was clearly traveling much, much slower than the speed limit. The truck eventually came to a stop. The truck was a Swift Transportation truck.

(*Id.*). According to Plaintiff, the impact occurred approximately 150 feet from the intersection of Highway 231 and Highway 82. (Doc. # 25, at 9 (citing Doc. # 24 Ex. K, Scaled Aerial Photograph of the Intersection of Highway 231 and Highway 82)). Based upon Jackson's testimony that he saw the truck moving steadily at approximately 10 mph while going through the intersection, Plaintiff contends that it is impossible for the truck to have been traveling as fast as 40 mph at the time of impact—a mere 150 feet prior—particularly since Blockett testified that he did not immediately brake after hearing the boom. (*Id.*). Thus, Plaintiff argues that, at the time of the accident, Zatarain was driving within the speed limit and that Blockett was driving at an excessively slow speed.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

10

that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. Pro. 56(a). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[6] *Celotex*. 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23; *see also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–16 (11th Cir. 1993) ("For issues, however, on which the non-movant would bear the burden of proof at trial, . . . '[t]he moving party may simply show[]—that is, point[] out to the district court—that there is an absence of evidence to support the non-moving party's case.'") (quoting *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir. 1991)).

Once the moving party has met its burden, the non-movant must "go beyond the pleadings" and show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *see*

---

[6] "An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is 'merely colorable' or is 'not significantly probative.'" *Lewis*, 908 F. Supp. at 943–44. (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case." *Id.* at 944 (citing *Anderson*, 477 U.S. at 248).

*also* Fed. R. Civ. Pro. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). *To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (emphasis added). A plaintiff must present evidence demonstrating that he can establish the basic elements of his claim. *Celotex,* 477 U.S. at 322. A court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

## ANALYSIS

Initially, Plaintiff brought five claims in this lawsuit. Three of these were claims against Swift Transportation for (1) negligent and/or wanton entrustment (Count III), (2)

negligent hiring, training, retention and supervision (Count IV), and (3) wanton hiring, training, retention, and supervision (Count V). However, in her Response, Plaintiff does not oppose summary judgment on these three claims. (Doc. # 25, at 12 n.10). As such, summary judgment is due to GRANTED on Counts III, IV, and V.

Thus, the only remaining claims to be considered on the motion for summary judgment are negligence (Count I) and wantonness (Count II) against Defendants.

## I. Negligence

The Alabama Supreme Court defines negligence as "the failure to do what a reasonably prudent person would have done under the same or similar circumstances." *Ford Motor Co. v. Burdeshaw*, 661 So. 2d 236, 238 (Ala. 1995) (citing *Elba Wood Prods., Inc. v. Brackin*, 356 So. 2d 119, 122 (Ala. 1978)); *accord Thomas v. Jim Walter Homes, Inc.*, 918 F. Supp. 1498, 1502–03 (M.D. Ala. 1996) (Albritton, J.). A plaintiff must establish four elements under a typical negligence claim: "(1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached that duty; (3) that the plaintiff suffered a loss or an injury; and (4) that the defendant's negligence was the actual and proximate cause of that loss or injury." *Id.* (citing *Lollar v. Poe*, 662 So. 2d 902, 905 (Ala. 1993)); *accord Thomas*, 918 F. Supp. at 1503.

However, a party can also establish negligence *per se* via a statutory violation by proving the following four elements: "(1) 'the party charged with negligent conduct [has] violated the statute;' (2) 'the statute was enacted to protect a class of persons which

13

includes the litigant seeking to assert the statute;' (3) 'the injury was of a type contemplated by the statute;' and (4) 'the statutory violation proximately caused the injury.'" *Edwards v. United States*, 552 F. Supp. 635, 638 (M.D. Ala. 1982) (Thompson, J.) (quoting *Fox v. Bartholf*, 374 So.2d 294, 295–96 (Ala. 1979)). "Generally, violation of a traffic ordinance or rule of the road constitutes negligence *per se*." *Carroll v. Deaton, Inc.*, 555 So.2d 140, 141 (Ala. 1989). However, violations of some traffic ordinances or rules only serve as prima facie evidence of negligence. *See Consolidated Freightways, Inc. v. Pacheco-Rivera*, 524 So. 2d 346, 350 (Ala. 1988). For example, "where the applicable Rule of the Road requires a judgment to be made on the part of the driver, the reasonable man standard applies and a violation of the statute is not negligence *per se*." *Id.*

Finally, Alabama follows the doctrine of contributory negligence, whereby a "plaintiff cannot recover in a negligence action where the plaintiff's own negligence is shown to have proximately contributed to his damage, notwithstanding a showing of negligence on the part of the defendant." *Hannah v. Gregg, Bland & Berry, Inc.*, 840 So. 2d 839, 860 (Ala. 2002) (citations omitted); *accord Jones v. State Farm Fire & Cas. Co.*, No. 2:05-cv-1119-WKW, 2007 U.S. Dist. LEXIS 80894, at *22 (M.D. Ala. Oc. 31, 2007) (Watkins, J.) ("Under Alabama law contributory negligence is a complete bar to recovery."). Contributory negligence is "normally [a question] for the jury. However, where the facts are such that all reasonable persons must reach the same conclusion,

contributory negligence may be found as a matter of law." *Hannah*, 840 So. 2d at 860 (citations omitted); *see also Salter v. United States*, 880 F. Supp. 1524, 1533 (M.D. Ala. 1995) (Albritton, J.) ("Unless the evidence bearing upon [contributory negligence] is entirely free of doubt and adverse inference, this question must be submitted to [a trier of fact].") (citations omitted). Thus, on a motion for summary judgment, a defendant "must show that the plaintiff put himself in danger's way and that the plaintiff had a conscious appreciation of the danger at the moment the incident occurred." *Hannah*, 840 So. 2d at 860 (citations omitted); *see also Salter*, 880 F. Supp. at 1533 (M.D. Ala. 1995) (Albritton, J.) ("Contributory negligence requires a finding that the plaintiff had knowledge of the danger and appreciated the danger under the circumstances and yet put himself in the way of harm. . . . Where a plaintiff 'had knowledge of facts sufficient to warn a man of ordinary sense and prudence of the danger to be encountered, and of the natural and probable consequences of his own conduct[],' plaintiff is 'guilty of negligence if he fails to exercise ordinary care to discover and avoid the danger and the injury.").[7]

Here, Defendants contend that Plaintiff cannot establish a breach of duty or proximate causation sufficient to establish a negligence claim because their evidence shows that Blockett was traveling at 40 mph and that Zatarain was "speeding and being inattentive." (Doc. # 17, at 12). Defendants further claim that Zatarain was contributorily

---

[7] Contributory negligence is an affirmative defense that must be specifically plead in a responsive pleading. Fed. R. Civ. Pro. 8(c)(1). Both Blockett and Swift properly plead contributory negligence as an affirmative defense in their respective answers to the complaint. (Doc. # 32, Exs.1 & 2).

15

negligent because of his "[s]peeding and failure to keep a proper look out at night in a construction zone." *Id.* at 14; *see also id.* at 17 (arguing that Zatarain breached his duty to maintain a proper lookout, as that duty is explained in Alabama Pattern Jury Instruction 26.08). Thus, they claim that he failed to exercise the degree of care that a reasonably prudent person would under the same circumstances. *Id.* at 15. Finally, Defendants argue that Zatarain was contributorily negligent *per se* because his speeding violated Alabama Code § 32-5A-171.[8] However, all of Defendants' arguments depend on a reasonable jury believing the evidence presented by Defendants—*i.e.* that Blockett was traveling at 40 mph and that Zatarain was speeding. A reasonable jury could believe Defendants' evidence and find no negligence on the part of Blockett and/or contributory negligence on the part of Zatarain.

Or, that same reasonable jury could instead believe Plaintiff's evidence—*i.e.* that Defendant's version of the facts is impossible and that the more likely occurrence was a

---

[8] Alabama Code § 32-5A-171 provides maximum lawful speeds on Alabama roads in various situations or locations. For example, one provision states that:

> [n]o person shall operate a motor vehicle on the highways in this state, other than interstate highways or highways having four or more traffic lanes, at a speed in excess of 55 miles per hour at any time unless a different maximum rate of speed is authorized by the Governor under authority granted in subdivision (6) or as provided in subdivision (7).

Ala. Code § 32-5A-171(3). Subdivisions (6) and (7) permit certain entities to change the previously set forth maximum speed limit under particular circumstances. *Id.* § 32-5A-171(6)–(7). This Court is unable to ascertain which provision of Alabama Code § 32-5A-171 would apply in this case because the Defendants have not cited to a particular provision and the accident occurred in a construction zone—where the speed limit has possibly been lowered from the typical maximum speed that would have been found on that stretch of road.

16

speed of 55 mph for Zatarain and a speed of 10 mph for Blockett—and find that Blockett was negligent and that there was no contributory negligence by Zatarain.[9] In sum, there are two distinct versions of the events leading up to the collision, and a reasonable jury could believe either. Such genuine issues of material fact preclude judgment as a matter of law for Defendants. As such, Defendants' Motion for Summary Judgment, (Doc. # 16), is due to be DENIED with respect to Plaintiff's negligence claim (Count I).

## II. Wantonness

---

[9] Like Defendants, Plaintiff argues that Blockett was negligent *per se*. However, for a plaintiff to assert negligence *per se*, such a claim must be included in the complaint. *See Youngblood v. Myong Shin Yi*, No. 2:08-cv-117-MEF, 2010 U.S. Dist. LEXIS 319, at *14–15 (M.D. Ala. Jan. 5, 2010) (Fuller, C.J.) (holding that the plaintiff cannot present a negligence *per se* claim to the jury because "[n]egligence *per se* was not included in the complaint, [and because] it is well-settled in this circuit that one may not amend the pleadings by briefs submitted in opposition to a motion for summary judgment"). Thus, Plaintiff will not be permitted to present a negligence *per se* claim to the jury because Plaintiff's complaint makes no mention of negligence *per se* or the statute at issue and because she cannot amend her pleadings in opposition to a summary judgment motion. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) (per curium) (holding that the liberal pleading standard does not allow a plaintiff to raise a new claim at the summary judgment stage).

Furthermore, even if Plaintiff had brought a claim for negligence *per se* in her complaint, the statute that she relies upon cannot serve as the basis for negligence *per se*. She contends that if Blockett was traveling at 10 mph, as she claims he was, then he would be violating Alabama Code § 32-5A-174. This statute provides, in pertinent part, that "[n]o person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic except when a reduced speed is necessary for safe operation or in compliance with the law." Alabama Code § 32-5A-174(a). However, even if a jury finds that Blockett was traveling at 10 mph and violated Alabama Code § 32-5A-174(a), such a finding would not be negligence *per se* because the statute requires a judgment call on the driver's part as to the reasonableness of his speed as it relates to the safe operation of his vehicle. *See Consolidated Freightways*, 524 So. 2d at 350 (holding that an Alabama statute requiring drivers to drive "as nearly as practicable entirely within a single lane" and to not move from that lane "until the driver has first ascertained that such movement can be made with safety" could not be the basis for a finding of negligence per se because it required the driver to make a judgment as to whether the move could be done safely). For this additional reason, Plaintiff cannot present a negligence *per se* claim to the jury.

17

Under Alabama law, "wantonness is the doing of some act or the omission to do some act with reckless indifference that such act or omission will likely or probably result in injury." *IMAC Energy, Inc. V. Tittle*, 590 So. 2d 163, 169 (Ala. 1991); *accord Blizzard v. Food Giant Supermarkets, Inc.*, 196 F. Supp. 2d 1202, 1208 (M.D. Ala. 2002) (Albritton, J.) (citations omitted); *see also* Ala. Code § 6-11-20(b)(3) (defining wantonness as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others"). As explained more fully in *Blizzard*:

> While one not need prove intentional conduct to prove wantonness, wantonness requires evidence of a reckless or conscious disregard of the rights and safety of others. *Wal-Mart Stores, Inc. v. Thompson*, 726 So. 2d 651, 654 (Ala. 1998).
>
> > Wantonness may arise [when one has] knowledge that persons, though not seen, are likely to be in a position of danger, and with conscious disregard of known conditions of danger and in violation of law brings on disaster. . . . Wantonness may arise after discover of actual peril, by conscious failure to use preventative means at hand. . . . Knowledge need not be shown by direct proof, but may be shown by adducing facts from which knowledge is a legitimate inference.
>
> *Smith v. Bradford*, 512 So. 2d 50, 52 (Ala. 1987).

196 F. Supp. 2d at 1209. Thus, wantonness is a distinct theory of liability from negligence. *See Tolbert v. Tolbert*, 903 So. 2d 103, 115 (Ala. 2004) ("Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability."); *see also Salter v. Westra*, 904 F.2d 1517, 1525 (11th Cir. 1990) ("[N]egligence in not

appreciating the dangerousness of the conditions is not wantonness.") (citations omitted).

Here, even construing the facts in favor of Plaintiff, there is simply no evidence before this Court by which a reasonable jury could find wantonness—*i.e.* a *conscious* or *reckless* disregard of the rights or safety of others, as opposed to mere inadvertence.[10]  *See e.g.*, *Tolbert*, 903 So. 2d at 115 (affirming summary judgment for the defendant on a wantonness claim from an automobile accident where the evidence did not establish "more than a showing of some form of inadvertence on the part of the driver or that it rose to the required showing of some degree of consciousness on the part of the defendant that injuries are likely to result from his act or omissions"); *see also Haynes v. Sarsfield*, No. 2:06-cv-519-MEF, 2007 U.S. Dist. LEXIS 61869, at *9 (M.D. Ala. Aug. 21, 2007) (Fuller, C.J.) (granting summary judgment to the defendant on a wantonness claim from an automobile accident and finding "a total lack of evidence from which the jury could reasonably infer wantonness" where the defendant pulled out in front of plaintiff on a highway, but did not see the plaintiff because she was attempting to avoid a pothole). Thus, Defendants' Motion for Summary Judgment, (Doc. # 16), is due to be GRANTED with respect to Plaintiff's wantonness claim (Count II).

## CONCLUSION

---

[10]  Indeed, during her brief discussion of the wantonness claim in the response to the summary judgment motion, Plaintiff herself uses the negligence standard and simply argues that a person in Blockett's position "*should* [have] be[en] aware that [his] conduct will likely result in injury." (Doc. # 25, at 14).  However, wantonness is qualitatively different than negligence, and the evidence before this Court merely establishes inadvertence, not a conscious or reckless disregard of the rights or safety of others.

For the foregoing reasons, it is hereby ORDERED that the Motion for Summary Judgment, (Doc. # 16), is GRANTED with respect to the claims for wantonness (Count II), negligent and/or wanton entrustment (Count III), negligent hiring, training, retention and supervision (Count IV), and wanton hiring, training retention and supervision (Count V).

It is further ORDERED that the motion is DENIED with respect to the negligence claim (Count I).

DONE this 12th day of April, 2011.

/s/ Mark E. Fuller<br>
CHIEF UNITED STATES DISTRICT JUDGE